UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES | |
| v. | No. 3:17-cr-000151 (SRU) |
| RUFUS HOWELL | |

**RULING ON MOTIONS TO SUPPRESS AND COMPEL EVIDENCE**

Rufus Howell is charged with possession with intent to distribute heroin and cocaine and unlawful possession of a firearm. Compl., Doc. No. 1, at 1. The indictment charges Howell with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) & 924(a)(2) (Count One); with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(C) (Count Two); with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(C) (Count Three); and with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Four). Howell filed a motion to compel the government to produce information regarding a Hartford Police Department ("HPD") confidential informant, Doc. No, 20, and a motion to suppress evidence obtained during his arrest and subsequent statement to the police, Doc. No. 21. For the following reasons, both motions are denied.

**I.    Background**

The factual summary that follows was provided by Alex Estrella in a sworn affidavit in support of a federal arrest warrant for Rufus Howell. Ex. A, Doc. No. 21-2, at 2. Alex Estrella is Special Deputy United States Marshal and Task Force Officer for the Federal Bureau of Investigation. *Id.*

In May 2017, a confidential informant ("CI") provided information to HPD that Howell possessed a firearm and was selling cocaine and crack cocaine in Hartford, Connecticut. The CI described Howell's physical appearance and car, and identified him from a Hartford police photograph.

On June 21, 2017, HPD officers saw Howell's car parked at the Sunset Café in Hartford. They saw the driver leave the car and get into the passenger seat of a different vehicle. Minutes later, Howell's car left the café and drove to a gas station. The car had a temporary tag, which did not match up to that vehicle. HPD officers observed Howell get out of the car and then return to the driver's seat before leaving the gas station. Howell then began to drive away from the gas station. He drove above the speed limit, stopped and impeded traffic in an intersection, and made a right turn without signaling. Based on those traffic violations, HPD officers intended to stop Howell, but he parked the car before they could pull him over. The officers drew their weapons and approached the car. Officer Estrella reported that he smelled marijuana coming from the car. He asked Howell for his registration and proof of insurance, and Howell gave him permission to enter the vehicle. When Estrella opened the car door, he saw a firearm. Because of Howell's criminal history, he was then placed under arrest for criminal possession of a firearm. HPD officers then searched the rest of the car and found marijuana, cocaine, and heroin.

**II. Discussion**

A. Motion to Suppress Evidence

An evidentiary hearing on a motion to suppress "ordinarily is required if the moving papers are sufficiently definite, specific, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (citations and quotations omitted). A defendant seeking a

hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact. *Id.* at 338. Furthermore, "[t]he defendant's burden is not satisfied by conclusory, non-particularized allegations of unlawful official behavior." *United States v. Tracy*, 758 F. Supp. 816, 820 (D. Conn. 1991).

Howell argues that all evidence obtained by HPD – the witness identification, the firearm, narcotics, cash, and statements – were the "direct fruits" of "Fourth, Fifth, and Fourteenth Amendment violations" and therefore the "evidence must be suppressed." Mem. Supp. Def's Mot. to Supp. Evidence, Doc. No. 21-1, at 2.

The government contends that "Howell has not sustained his burden of demonstrating disputed issues of fact that would justify an evidentiary hearing by an affidavit of someone with personal knowledge of the underlying facts, and therefore his request for an evidentiary hearing should be denied, at least as it relates to Fourth Amendment claims." Gov's Opp. Mem., Doc. No. 73, at 1–2.

For the following reasons, I reject Howell's arguments.

1. *Did the CI's identification of Howell violate due process?*

The CI who identified Howell to the police will not be called upon to testify at trial. Gov's Opp. Mem., Doc. No. 73, at 7. Therefore, the issue of whether "the Government should be prohibited from referencing the identification at trial or eliciting testimony that the CI identified Mr. Howell's photograph" is moot. Mem. Supp. Def's Mot. to Supp. Evidence, Doc. No. 21-1, at 11.

2. *Did the police unlawfully seize Howell and his vehicle?*

Howell argues that all evidence obtained by HPD should be suppressed because, based on the CI's tip, HPD did not have the reasonable suspicion or probable cause necessary to effectuate the traffic stop. *Id.* at 13.

HPD officers did not, however, rely exclusively on the CI's tip to establish reasonable suspicion or probable cause to effectuate the traffic stop. Instead, HPD officers observed Howell commit numerous traffic infractions before initiating the stop: Howell drove above the speed limit, stopped and impeded traffic in an intersection, and made a right turn without signaling. *See* Ex. A, Doc. No. 21-2, at ¶ 8. Although Howell's attorney argues that "Mr. Howell denies that he committed any such traffic violation", Howell does not provide an affidavit by someone with personal knowledge of the underlying facts relating to the traffic violation that led to his arrest and to the evidence obtained by HPD.

Even if the traffic stop was pretextual and HPD initially relied on information from the CI, Howell's argument still fails because pretextual stops are not unconstitutional. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Thus, Howell's argument regarding the unlawful seizure is unsupported and his motion is denied on that ground.

3. *Did the police lack probable cause for Howell's de facto arrest?*

Howell argues that the police lacked probable cause to effectuate Howell's "de facto" arrest, drawing "their weapons before making any observations of Mr. Howell." Mem. Supp. Def's Mot. to Supp. Evidence, Doc. No. 21-1, at 18.

4

However, the HPD officers' decision to draw their weapons before approaching Howell's vehicle was based on a "specific, objective, and articulable reason[]." The officers had received information from the CI that Howell was likely in possession of a firearm. *United States v. Ceballos*, 654 F.2d 177, 181 (2d Cir. 1981). Because police officers may "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a] stop", the HPD officers' decision to draw their weapons before approaching Howell's vehicle was reasonable under the circumstances, and therefore probable cause is not at issue here. *United States v. Hensley*, 469 U.S. 221, 235 (1985).

Therefore, Howell's motion to suppress is denied on that ground.

4. *Was the search of the vehicle unlawful?*

Howell's attorney argues that "the suggestion that Mr. Howell consented…to the search of his vehicle is absurd." Mem. Supp. Def's Mot. to Supp. Evidence, Doc. No. 21-1, at 21.

However, Alex Estrella, Special Deputy United States Marshal and Task Force Officer for the Federal Bureau of Investigation, stated in his affidavit that Howell gave him permission to enter Howell's vehicle. Ex. A, Doc. No. 21-2, at ¶ 9.

Based on the totality of the circumstances, it is reasonable that Howell would have consented to a search of his vehicle because he was driving an unregistered car and sought to provide documentation that the vehicle belonged to him. *See* S*chneckloth v. Bustamone*, 412 U.S. 218, 226 (1973). The government demonstrates that, given the totality of the circumstances, Howell likely gave consent to search the vehicle. *See id.* Howell's argument that he did not provide consent is unsupported by an affidavit and is therefore denied.

5. *Should Howell's statements be suppressed?*

   a. Were the statements the fruit of an illegal seizure?

As discussed above, I find that Howell was not illegally seized. Therefore, the argument that Howell's statements are the fruit of an illegal seizure fails.

   b. Were the statements a product of custodial interrogation?

Howell argues that his "initial statements to the police must be suppressed because they were the product of custodial interrogation and were not preceded by *Miranda* warnings." Mem. Supp. Def's Mot. to Supp. Evidence, Doc. No. 21-1, at 25.

The government argues that Howell was advised of his *Miranda* rights, "which he acknowledged in writing and during a recorded interview." Gov's Opp. Mem., Doc. No. 73, at 25. The government also argues that the only questions that HPD officers asked Howell related to the vehicle's registration and insurance. *Id.* Because "*Miranda* warnings need not be given for interrogation during ordinary traffic stops[,]" the initial statements need not be suppressed. *United States v. Wong Ching Hing*, 867 F.2d 754, 756 (2d Cir. 1989).

Howell provides no evidence that he did not receive *Miranda* warnings, and the government provides evidence that Howell did receive *Miranda* warnings. Therefore, Howell's motion is denied on this ground.

For the foregoing reasons, Howell's motion to suppress the evidence obtained by HPD as a result of the traffic stop and subsequent arrest and search of the vehicle is denied.

B. <u>Motion to Compel Discovery</u>

Generally, the government maintains a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Rovario v. United States*, 353 U.S. 53, 59 (1957). The privilege exists to protect the

public interest in effective law enforcement. *Id.* However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the privilege must give way. *Id.* at 60–61. To determine whether the government should be ordered to disclose information about a CI, I must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. Relevant factors include "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

Howell argues that the court should compel the government to disclose information about the CI, including (1) the CI's name, date of birth, telephone number, and address; (2) financial or other benefits that the CI received as a result of providing the tip; (3) prior testimony; (4) prior work with law enforcement related to the present case; (5) the CI's criminal history including any and all pending, dismissed, or past state or federal criminal charges by information or indictment; and (6) any agreements or contracts between the CI and law enforcement. Mot. to Compel, Doc. No. 20, at 1. Howell's motion is premised on the assumption that Howell was stopped based on a tip from the CI.

The government argues that "Howell's motion should be denied to the extent that any of the requested information would reveal the identity of the CI, or could be used with other information and documents to reveal the CI's identity" because "the CI is not a witness to the offenses against Howell and will not testify at any trial" and therefore the CI's credibility will not be at issue unless Howell opens the door to information regarding the CI. Gov's Opp. Mem., Doc. No. 73, at 5.

7

Here, Howell argues that "the balance of equities weighs strongly in favor of disclosure" because "the CI is a crucial witness." Mem. Supp. Def's Mot. to Compel Evidence, Doc. No. 20-1, at 4. In addition, Howell argues that knowing the identity of the CI is necessary to avoid a *Brady* violation because the government has a duty to disclose "material impeachment evidence." *Id.* at 7. Finally, Howell argues that the CI's identity must be disclosed to allow Howell to prove entrapment. *Id.* at 8.

The balance here weighs in favor of nondisclosure of the CI's identity. *See Rovario*, 353 U.S. at 62. Importantly, the CI who identified Howell to the police will not be called upon to testify at trial. Gov's Opp. Mem., Doc. No. 73, at 7. The CI's tip did not lead to traffic stop. Therefore, Howell need not prepare impeachment evidence, and the CI is not a "crucial witness."

In addition, Howell argues that he needs to know the CI's identity to prepare an entrapment defense, but has not "produce[d] sufficient evidence of inducement" to warrant disclosure of the CI's identity for the purpose of preparing an entrapment defense. *See United States v. Taylor*, 475 F.3d 65, 70 (2d Cir. 2007). Howell merely states that he plans to pursue an entrapment defense, but does not produce any evidence of entrapment. Therefore, I deny Howell's motion to compel information about the CI.

### III. Conclusion

For the foregoing reasons, I deny Howell's motion to compel the government to produce discovery regarding the CI, Doc. No. 20, and motion to suppress evidence, Doc. No. 21.

So ordered.

Dated at Bridgeport, Connecticut, this 16th day of August 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge