UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>RUFUS HOWELL | No. 3:17-cr-151 (SRU) |

### ORDER AND RULING ON MOTION FOR RELEASE

Rufus Howell, currently incarcerated in Ray Brook FCI, filed the instant motion for immediate release pursuant to the First Step Act. Howell argues that the COVID-19 pandemic, coupled with his asthma and kidney condition, constitute "extraordinary and compelling" circumstances warranting a sentence reduction to time served under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). The government opposes the motion on the grounds that Howell's medical conditions are not sufficiently severe and that his criminal history counsels against release in any event.

For the reasons that follow, Howell's motion for release is **denied**.

**I.    Background**

Since the age of 18, Howell has amassed twenty-six convictions. *See* PSR, Doc. No. 87, ¶¶ 30–53. Among them is a federal drug conviction, for which he was sentenced to 48 months of imprisonment and one year of supervised release in 2005. *Id*. at ¶ 44. Shortly after he was released to a halfway house in September 2008, Howell was involved in an incident that led to charges of burglary (first degree) and threatening (second degree). *Id*. He pled guilty in Superior Court to the threatening charge and was sentenced to 11 months in prison. *Id*. at ¶ 46. About one year after he was released from prison on August 31, 2010, and while on supervised release, he was arrested for drug possession. *See id.* at ¶ 47.

In the years that followed, Howell continued to accumulate convictions, including for reckless driving and operating a vehicle with a suspended license. *Id.* at ¶¶ 48–52. On August 24, 2018, he pled guilty to the current offenses: unlawful possession of a firearm by a convicted felon and possession with intent to distribute heroin. Plea Agreement, Doc. No. 80.

On January 3, 2019, I sentenced Howell to 66 months in prison and ordered him to self-surrender by February 20, 2019.[1] Judgment, Doc. No. 95. Taking into account the six months of jail credit that he accrued between his arrest on July 6, 2017 and his release on bond in January 20, 2018, he has since served around 20 months, which he contends is equivalent to 24 months with good time credit. His projected release date is April 11, 2023. *See* FEDERAL BUREAU OF PRISONS, *Find an Inmate*, https://www.bop.gov/inmateloc/.

Howell now moves for compassionate release. He first submitted a request for compassionate release to the Bureau of Prisons ("BOP"), which he renewed through counsel on April 24, 2020. Mem. in Support of Mot. to Release, Doc. No. 109, at 3. Counsel additionally requested home confinement. *Id.* On May 1, 2020, the BOP denied both requests on the ground that Howell was not eligible for either form of release. Ex. R to Mem. in Support of Mot. to Release, Doc. No. 109-1.

At the same time, Howell filed a *pro se* motion for compassionate release in this court, doc. no. 106, which was later supplemented by counsel on May 1, 2020, doc. no. 108.

**II.   Discussion**

As amended by the First Step Act, 18 U.S.C. § 3582 authorizes sentencing courts to reduce a term of imprisonment if, after considering the applicable factors set forth in section

---

[1] As provided in his presentence investigation report, his criminal history score was 19, which placed him in the criminal history category of VI. PSR, Doc. No. 87, at ¶ 56.

3553(a), it concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

A court may make such a modification only "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. § 3852(c)(1)(A). That Howell fully exhausted his administrative remedies is not disputed. *See* Opp. to Mot. for Release, Doc. No. 112, at 2 ("The Government agrees that there is sufficient evidence for the Court to find that the defendant has satisfied the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).").

The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary. *United States v. Gileno*, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020). That section instructs, in relevant part, that a court may reduce a term of imprisonment if the court determines that:

(1) "[e]xtraordinary and compelling reasons warrant the reduction;"

(2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

(3) "[t]he reduction is consistent with this policy statement."

U.S.S.G. § 1B1.13

The accompanying commentary enumerates various circumstances constituting extraordinary and compelling reasons, including terminal illness, serious medical conditions,

advanced age, and certain family circumstances.[2]  U.S.S.G. § 1B1.13, cmt. 1(A)–(C).  The commentary also includes a fifth catch-all provision for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as "determined by the Director of the Bureau of Prisons."[3]  U.S.S.G. § 1B1.13, cmt. 1(D).  Significantly, the defendant bears the burden of proving that he or she is entitled to a sentence reduction.  *United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020) (internal citations omitted).

Since the outbreak of the COVID-19 pandemic, courts within this circuit and across the country have concluded that "extraordinary and compelling" circumstances exist when an incarcerated defendant suffers from health conditions that make him particularly susceptible to serious complications should he contract COVID-19.  *See, e.g.*, *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020) (holding that extraordinary and compelling reasons justified immediate release under section 3582(c)(1)(A) because the defendant suffered from "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19") (internal quotation marks, citations, and alteration omitted).  Those circumstances have not been established here.

As set forth in his motion, and as corroborated by his medical records, Howell suffers from asthma.  The severity of his asthma, however, is unclear; his medical records, for instance, describe his asthma as "unspecified" and "at a change of seasons."  Ex. N. to Mem. in Support of

---

[2] Howell does not appear to argue that those categories apply here.  To the extent he does advance that argument, I reject it as unavailing.  It is clear that Howell, who is almost 42 years old, is not of advanced age.  Further, Howell has not proffered any facts indicating that he has a terminal illness.  Finally, for the reasons I discuss below, he has likewise not demonstrated that he suffers from a serious medical condition or that his family circumstances warrant release.

[3] As I and the majority of district judges have held, courts may make that determination independent of the BOP.  *United States v. Almontes*, 2020 WL 1812713, *3 (D. Conn. Apr. 9, 2020) ("I agree with the vast majority of district courts: I can consider whether reasons other than the inmate's medical condition, age, and family circumstances amount to an extraordinary and compelling reason to reduce that inmate's sentence.").

Mot. for Release, Doc. No. 111, at 3, 6. Because the CDC has identified only moderate to severe asthma as a comorbidity that elevates the likelihood of serious illness from COVID-19, Howell's failure to specify the extent of his condition is fatal to his motion. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Moderate to Severe Asthma*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited May 7, 2015).

If anything, his medical records suggest that his asthma is mild. Although his prescriptions for an albuterol inhaler and a Mometasone Furoate inhaler were renewed during a March 19, 2019 appointment, Howell did not raise any "acute complaints" regarding his respiratory conditions at the time. Ex. N. to Mem. in Support of Mot. for Release, Doc. No. 111, at 8–10. His records further reveal that he did not have any active prescriptions for an albuterol inhaler from September 15, 2019 (when his last prescription expired) through April 22, 2020 (when his prescription was renewed). *Id*. at 11. Moreover, according to his records, his prescription for a Mometasone Furoate inhaler expired on September 15, 2019 and had not been renewed as of April 30, 2020. *Id*.

Although Howell contends in his reply that he requires regular hospitalization to assist with breathing in the late winter/early spring, when his asthma is most severe, doc. no. 114, at 4, that assertion is not corroborated by the medical records. It also does not prove that his condition is either moderate or severe. *See United States v. Washington*, 2020 WL 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (holding that a generalized claim of asthma is not a sufficiently extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)). For the foregoing reasons, I conclude that Howell has not carried his burden of proving that extraordinary and compelling reasons qualify him for release under 18 U.S.C. § 3582(c)(1)(A).

Howell's kidney condition does not compel a conclusion to the contrary.  As the government recognizes, the CDC identifies individuals with "chronic kidney disease undergoing dialysis" as at a greater risk of serious illness should they contract COVID-19.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *People Who are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 7, 2020).  The medical records, however, do not suggest that Howell is suffering from a chronic kidney disease or receiving dialysis.  To the contrary, they reflect only that he was seen for "abnormal renal function," and that a renal ultrasound showed "mild – moderate uniform thinning of the cortex of [the] left kidney."  Ex. S. to Mem. in Support of Mot. for Release, Doc. No. 111, at 13–14.

In his reply, Howell puts forth an additional reason in support of his release: the health conditions of his family members.  Reply, Doc. No. 113, at 2.  Howell claims that his mother is legally blind and has diabetes, and that his brother has an Autism Spectrum Disorder and Type 2 diabetes.  His brother requires regular monitoring of his blood sugar, and both his brother and mother require insulin shots.  His mother currently pays a neighbor to help with her insulin shots—an activity with which she does not feel comfortable and which she soon might not be able to afford.  His brother administers the shots himself, even though his doctor would prefer that someone else measure the insulin in light of the fact that he has been hospitalized in the past for attempting to administer his own medication.

Howell contends that, if he were released, he would live with his mother and brother on home confinement, administer their insulin, and care for them.  He further notes that the programs that previously assisted his brother and mother with their medical conditions have been cancelled due to the COVID-19 pandemic.

6

In my view, those circumstances, without more, do not rise to the level of extraordinary and compelling reasons warranting release. The cases to which Howell cites as support are neither binding nor analogous, principally because each of the defendants had served the majority of their sentence or had spent substantial time in prison. *United States v. Millan*, 2020 WL 1674058, at *1, *9 (S.D.N.Y. Apr. 6, 2020) (defendant served more than 28 years in prison and demonstrated extraordinary rehabilitation); *United States v. Reyes*, 2020 WL 1663129, at *2, *5 (N.D. Ill. Apr. 3, 2020) (defendant served 15 years in prison, the majority of his sentence); *United States v. Perez*, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020) (defendant served more than 30 years in prison); *United States v. Walker*, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019) (defendant served over 100 months of his 114-month sentence and his mother was terminally ill); *United States v. Bucci*, 409 F. Supp. 3d 1, 2–3 (D. Mass. 2019) (defendant served "substantial time" in prison and was the only potential caregiver for his ailing mother). Howell, by contrast, has served only twenty months—less than one-third—of his sentence.[4]

Even if Howell could establish extraordinary and compelling reasons, I would still have difficulty ordering his release because I cannot conclude that Howell would not pose a danger to the safety of any other person or to the community. *Morales*, 2020 WL 2097630, at *3–*4 (denying motion for sentence reduction when the defendant demonstrated extraordinary and compelling medical circumstances but was a danger to the community). Howell committed a serious crime and has a lengthy criminal history, which includes criminal activity while on supervised release. Although I commend Howell for his accomplishments in prison thus far, the fact remains that Howell has only spent twenty months in custody. That is a shorter amount of time than prior periods of his incarceration that have yielded minimal deterrent effect. Howell's

---

[4] Even accounting for good time credit, which increases his time served to 24 months, Howell has still served a small portion—a little over one-third—of his sentence.

7

proposed release plan, which includes home confinement with probation supervision, does not assuage my concerns.

Finally, after considering the factors set forth in 18 U.S.C. § 3553(a), I further conclude that, with roughly three years remaining on Howell's sentence, a sentence of time served would not be sufficient to accomplish the goals of sentencing. I recognize that outside visits and programming in the BOP are suspended at this time, which may indeed prevent part of what I hoped to achieve with his sentence. The need to reflect the seriousness of the crime, to afford adequate deterrence, and to protect the public, however, all still weigh against a reduced sentence. As noted in the judgment, the crimes represented an escalation of his prior conduct and his sentence was an incremental increase over the longest sentence that he has served in the past. Judgment, Doc. No. 95.

Although Howell did excel while on pretrial release for a full year, I already considered that fact in his favor at sentencing and nonetheless determined that a sentence of 66 months was necessary to achieve the purposes of sentencing. I remain hopeful that, with the passage of additional time, Howell will continue on the path he started before his sentence when he returns to the community.

### III.    Conclusion

For the foregoing reasons, Howell's motion for compassionate release (doc. nos. 106, 108) is **denied**.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 12th day of May 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge