UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>RUFUS HOWELL | No. 3:17-cr-151 (SRU) |

### ORDER AND RULING ON MOTION FOR RELEASE

Rufus Howell, currently incarcerated in Danbury FCI[1], filed a renewed motion for immediate release pursuant to the First Step Act. Howell primarily argues that since the denial of his former motion for release, he has been diagnosed with chronic kidney disease and has located new medical records that corroborate the longstanding and severe nature of his asthma. Those conditions, Howell contends, constitute "extraordinary and compelling" reasons warranting a sentence reduction to time served under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).

The government opposes the motion on the grounds that: (1) the new medical records fail to sufficiently demonstrate the existence of "extraordinary and compelling" circumstances, and (2) Howell's criminal history counsels against release in any event.

For the reasons that follow, Howell's motion for release is **denied**.

### I.      Background

Since the age of 18, Howell has amassed twenty-six convictions. *See* PSR, Doc. No. 87, ¶¶ 30–53. Among them is a federal drug conviction, for which he was sentenced to 48 months of imprisonment and one year of supervised release in 2005. *Id*. at ¶ 44. Shortly after he was

---

[1] It appears that Howell has transferred to a different correctional facility since the filing of his motion. Although his motion states that he is incarcerated in Ray Brook FCI, the BOP website indicates that he now resides in Danbury FCI. FEDERAL BUREAU OF PRISONS, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited September 16, 2020).

released to a halfway house in September 2008, Howell was involved in an incident that led to charges of burglary (first degree) and threatening (second degree). *Id*. He pled guilty in Superior Court to the threatening charge and was sentenced to 11 months in prison. *Id*. at ¶ 46. About one year after he was released from prison on August 31, 2010, and while on supervised release, he was arrested for drug possession. *See id.* at ¶ 47.

In the years that followed, Howell continued to accumulate convictions, including for reckless driving and operating a vehicle with a suspended license. *Id.* at ¶¶ 48–52. On August 24, 2018, he pled guilty to the current offenses: unlawful possession of a firearm by a convicted felon and possession with intent to distribute heroin. Plea Agreement, Doc. No. 80.

On January 3, 2019, I sentenced Howell to 66 months in prison and ordered him to self-surrender by February 20, 2019.[2] Judgment, Doc. No. 95. Taking into account the six months of jail credit that he accrued between his arrest on July 6, 2017 and his release on bond in January 20, 2018, he has since served around 24 months, which he contends is equivalent to 28 months with good time credit. His projected release date is April 11, 2023. *See* FEDERAL BUREAU OF PRISONS, *Find an Inmate*, https://www.bop.gov/inmateloc/.

Howell filed his original motion for release in this court on May 1, 2020, doc. no. 106, which I denied on May 12, 2020, doc. no. 115. Around three months later, on July 27, 2020, he filed a renewed motion. Doc. No. 123. The government submitted an opposition on July 31, 2020, doc. no. 124, and Howell replied on August 7, 2020, doc. no. 125.

---

[2] As provided in his presentence investigation report, his criminal history score was 19, which placed him in the criminal history category of VI. PSR, Doc. No. 87, at ¶ 56.

2

**II.     Discussion**

As amended by the First Step Act, 18 U.S.C. § 3582 authorizes sentencing courts to reduce a term of imprisonment if, after considering the applicable factors set forth in section 3553(a), it concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary.  *United States v. Gileno*, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020).  That section instructs, in relevant part, that a court may reduce a term of imprisonment if the court determines that:

(1) "[e]xtraordinary and compelling reasons warrant the reduction;"

(2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

(3) "[t]he reduction is consistent with this policy statement."

U.S.S.G. § 1B1.13.

The accompanying commentary enumerates various circumstances constituting extraordinary and compelling reasons, including terminal illness, serious medical conditions, advanced age, and certain family circumstances.[3]  U.S.S.G. § 1B1.13, cmt. 1(A)–(C).  The commentary also includes a fifth catch-all provision for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as "determined by the Director of the Bureau of Prisons."[4]  U.S.S.G. § 1B1.13, cmt. 1(D).

---

[3] Howell does not appear to argue that those categories apply here.  To the extent he does advance that argument, I reject it as unavailing.  It is clear that Howell, who is 43 years old, is not of advanced age.  Further, Howell has not proffered any facts indicating that he has a terminal illness.  Finally, for the reasons I discuss below, he has likewise not demonstrated that he suffers from a serious medical condition.

[4] As I and the majority of district courts have held, courts may make that determination independent of the BOP.  *United States v. Almontes*, 2020 WL 1812713, *3 (D. Conn. Apr. 9, 2020) ("I agree with the vast majority of

3

Significantly, the defendant bears the burden of proving that he or she is entitled to a sentence reduction. *United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020) (internal citations omitted).

Since the outbreak of the COVID-19 pandemic, courts within this circuit and across the country have concluded that "extraordinary and compelling" circumstances exist when an incarcerated defendant suffers from health conditions that make them particularly susceptible to serious complications should they contract COVID-19. *See, e.g.*, *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020) (holding that extraordinary and compelling reasons justified immediate release under section 3582(c)(1)(A) because the defendant suffered from "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19") (internal quotation marks, citations, and alteration omitted).

As set forth in his motion, and as corroborated by his medical records, Howell suffers from asthma. Even with the new records that Howell introduces, however, the present severity of his asthma remains unclear. Most of the medical records on which Howell relies date from 1993 to 2011, and his more recent records dated July 8, 2020 describe his asthma as "unspecified." *See* Ex. A to Mot. for Release, Doc. No. 122-1, at 2, 4. Because the CDC has identified only moderate to severe asthma as a comorbidity that "might" elevate the likelihood of serious illness from COVID-19, CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Moderate to Severe Asthma*, https://www.cdc.gov, Howell's failure to specify the extent of his condition is fatal to his motion, s*ee United States v. Washington*, 2020 WL 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (holding that a generalized claim of asthma is not a sufficiently extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)).

---

district courts: I can consider whether reasons other than the inmate's medical condition, age, and family circumstances amount to an extraordinary and compelling reason to reduce that inmate's sentence.").

The medical records that Howell presents to support his claim that he suffers from chronic kidney disease are also not particularly instructive.  As a preliminary matter, it is without question that the CDC identifies individuals with chronic kidney disease as at greater risk of serious illness should they contract COVID-19.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, https://www.cdc.gov (last visited September 16, 2020).  The medical records, however, are ambiguous regarding whether Howell suffers from that ailment.  Although administrative notes dated July 7, 2020 and July 8, 2020 provide that Howell "requires further evaluation and treatment for CKD" and identify his diagnosis as "chronic kidney disease, unspecified," doc. no. 122-1, at 3–4, other administrative notes dated July 7, 2020 describe his chronic kidney disease diagnosis as "provisional," *id*. at 5.

At any rate, I need not decide whether Howell has sufficiently established extraordinary and compelling circumstances because even if Howell has carried that burden, I cannot conclude that Howell would not pose a danger to the safety of any other person or to the community.  As I noted in my prior ruling, Howell committed a serious crime and has a lengthy criminal history, which includes criminal activity while on supervised release.  Howell has spent only twenty-four months in custody, which is approximately one-third of his sentence[5] and which is a shorter amount of time than prior periods of incarceration that have yielded minimal deterrent effect.  Moreover, Howell relies on the same proposed release plan as he did in his prior motion, which did not then, and does not now, assuage my concerns.

Finally, after considering the factors set forth in 18 U.S.C. § 3553(a), I further conclude that, with roughly two and a half years remaining on Howell's sentence, a sentence of time served would not be sufficient to comport with the goals of sentencing.  I recognize that outside

---

[5] Even accounting for good time credit, which increases his time served to 28 months, Howell has still served a small portion—less than one-half—of his sentence.

visits and programming in the BOP are suspended at this time, which may indeed prevent part of what I hoped to achieve with his sentence. The need to reflect the seriousness of the crime, to afford adequate deterrence, and to protect the public, however, all still weigh against a reduced sentence. As noted in the judgment, the crimes represented an escalation of his prior conduct and his sentence was an incremental increase over the longest sentence that he has served in the past. Judgment, Doc. No. 95. Although Howell did excel while on pretrial release for a full year, I already considered that fact in his favor at sentencing and nonetheless determined that a sentence of 66 months was necessary to achieve the purposes of sentencing. I note further that his sentence was considerably lower than the guidelines imprisonment range of 77 to 96 months. Doc. No. 87, at ¶ 106.

In addition, Howell has failed to demonstrate that his current correctional institution is incapable of managing the COVID-19 pandemic or of providing proper care should he contract the virus, which further underscores that release is not warranted here. *See United States v. Gagne*, 2020 WL 1640152, at *5 (D. Conn. Apr. 2, 2020) (denying compassionate release in part because the defendant failed to show that the BOP's response to confirmed COVID-19 cases at Danbury had been "inadequate from a medical standpoint"); *United States v. Gamble*, 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020) (denying compassionate release in part because the prisoner had "not shown that the BOP cannot adequately manage the pandemic or treat [him]").

Federal prisons are operating under modified procedures to mitigate the spread of COVID-19. *See* FEDERAL BUREAU OF PRISONS, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited September 16, 2020). Under those rules, "[s]ocial visits are suspended," "[a]ll newly-arriving BOP inmates are processed through quarantine or jail/detention sites and screened for COVID-19 exposure risk factors and

symptoms," "[a]symptomatic inmates with exposure risk factors are quarantined," and "[s]ymptomatic inmates with exposure risk factors will be isolated and tested for COVID-19 per local health authority protocols." *Id*. The movement of prisoners is also restricted, and enhanced health screening of staff, such as self-reporting and temperature checks, is being performed at all BOP locations. *Id*. Those measures appear to have been effective at Danbury, which currently reports two active COVID-19 cases among prisoners and no active COVID-19 cases among staff members. *See* FEDERAL BUREAU OF PRISONS, *COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited September 16, 2020).

For all the foregoing reasons, I conclude that the section 3553(a) factors weigh against granting the relief Howell seeks under section 3582(c)(1)(A). *See United States v. Morales*, 2020 WL 2097630, at *3–*4 (D. Conn. May 1, 2020) (denying compassionate release to a defendant with asthma because "the defendant continue[d] to pose a real danger to the community" and a sentence of time served would not "achieve the goals of sentencing"); *United States v. Miranda*, 2020 WL 2124604, at *4–*5 (D. Conn. May 5, 2020) (denying compassionate release to a defendant with diabetes because of the defendant's "history of threatened violence and the quantity of drugs involved").

### III.   Conclusion

Howell's motion for compassionate release (doc. no. 123) is **denied**.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 16th day of September 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

7