**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>RUFUS HOWELL | No. 3:17-cr-151 (SRU) |

## ORDER AND RULING ON MOTION FOR RELEASE

Rufus Howell ("Howell"), currently incarcerated in Allenwood Medium Federal Correctional Institute ("Allenwood Medium FCI"), has filed several renewed motions for immediate release.  Howell argues that since the denial of his former motions for release, his chronic kidney disease has progressed.  That condition, Howell contends, constitutes "extraordinary and compelling" reasons warranting a sentence reduction to time served under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).  For the reasons that follow, Howell's motion for release is **granted**.

## I.      Relevant Background

I assume the parties' familiarity with Howell's lengthy criminal history, including criminal activity while on supervised release, as set forth in my prior rulings.  *See* Doc. No. 115 at 1-2; Doc. No. 126 at 1-2.  For his most recent offense, I sentenced Howell on January 3, 2019 to sixty-six months in prison.  Judgment, Doc. No. 95.  His surrender date was February 20, 2019.  *Id.*  His current projected release date is July 28, 2023.  *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed January 6, 2023).

Howell is serving his sentence at Allenwood Medium FCI, a facility with 1,274 inmates. *See* Federal Bureau of Prisons, FCI Allenwood Medium, available at https://www.bop.gov/locations/institutions/alm/ (last accessed January 6, 2023).  The BOP states

that no inmates at Allenwood Medium FCI are currently COVID-19 positive and that 495

inmates have "recovered" from COVID-19.  *See* Federal Bureau of Prisons, COVID-19 Cases,

available at https://www.bop.gov/coronavirus/ (last accessed January 6, 2023).

Howell is 45 years old.  His current medical history includes asthma and chronic kidney

disease, stage 3a.  Doc. No. 159 at 6.

Principally citing to his medical conditions, Howell has repeatedly moved for

compassionate release.  He initially sought release on April 23, 2020, doc. no. 106, which I

denied on May 12, 2020, doc. no. 115.  Around three months later, he filed a renewed motion for

release, doc. no. 123, which I also denied on September 16, 2020, doc. no. 126.  He again moved

for release on December 22, 2020, which I denied on June 11, 2021.  Docs. No. 131, 143.  In

each of those denials, I doubted that Howell had established sufficiently extraordinary and

compelling reasons to warrant release, and I concluded that the factors set forth in 18 U.S.C. §

3553(a) counseled against reducing Howell's sentence.  *See* Doc. No. 115 at 4-5, 7-8; Doc. No.

126 at 4-5; Doc. No. 143 at 3-4.  I was especially troubled that Howell had not yet served a

sufficient share of his sentence to accomplish the goals of sentencing, especially in light of his

extensive record of criminal conduct.  Doc. No. 115 at 8; Doc. No. 126 at 5; Doc. No. 143 at 3.

Howell appealed the June 11, 2021 ruling to the United States Court of Appeals for the Second

Circuit.  Doc. No. 144.

While the appeal was pending, Howell filed additional motions for release.  Specifically,

October 20, 2021, Howell filed a *pro se* letter motion seeking compassionate release.  Doc. No.

146.  Howell subsequently filed a counseled motion for sentence reduction on January 19, 2022.

Doc. No. 151.  The government opposed the motion, arguing that Howell's appeal had divested

this Court of jurisdiction and, in the alternative, that Howell's motion should be denied on the

merits for the same reasons that I had denied Howell's previous motions.  Doc. No. 155.  In

addition, the Court received written correspondence from Howell's brother regarding Howell's

declining health.  On December 1, 2022, Howell, at the request of the Court and through counsel,

supplemented his motion with updated information regarding his medical condition.  Doc. No.

157.  On January 6, 2023, Howell also updated the Court regarding his re-entry plan, which he

docketed as a renewed motion for release.  Doc. No. 162.  Because the January 6, 2023 motion is

the most recent filing, I will treat it as the operative motion for sentence reduction for the

purposes of this ruling.

During the pendency of Howell's appeal, I concluded that Howell's subsequent motions

addressed "an aspect of the case involved in the appeal" and that the appeal had thus divested

this Court of jurisdiction to consider the motions; therefore, I declined to rule on the pending

motions for release.  *See United States v. Vigna*, 455 F. Supp. 3d 68, 72 (S.D.N.Y. April 17,

2020).  However, on December 21, 2022, the Second Circuit filed a mandate granting Howell's

motion to voluntarily dismiss the appeal.  Doc. No. 161.  Now that this Court has jurisdiction, the

pending motions for release are ripe for review.  In addressing the motions, I give more weight to

the updated information provided in counsel's most recent filings and correspondence.

## II.     Standard of Review

As amended by the First Step Act, 18 U.S.C. § 3582 authorizes sentencing courts to

reduce a term of imprisonment if, after considering the applicable factors set forth in section

3553(a), it concludes that "extraordinary and compelling reasons warrant such a reduction" and

that "such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission."  18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement for compassionate release is found in U.S. Sentencing

Guidelines (U.S.S.G.) § 1B1.13 and Commentary.  *United States v. Gileno*, 2020 WL 1307108,

at *2 (D. Conn. Mar. 19, 2020).  That section instructs, in relevant part, that a court may reduce a

term of imprisonment if the court determines that: (1) "[e]xtraordinary and compelling reasons

warrant the reduction;" (2) "[t]he defendant is not a danger to the safety of any other person or to

the community, as provided in 18 U.S.C. § 3142(g);" and (3) "[t]he reduction is consistent with

this policy statement."  U.S.S.G. § 1B1.13.

Significantly, the movant bears the burden of proving that he is entitled to a sentence

reduction.  *United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020) (internal

citations omitted).

III.    **Discussion**

Since I last denied one of Howell's numerous motions for compassionate release, two

significant changes have occurred.  First, Howell's kidney condition has deteriorated.  Second,

Howell has now served nearly forty-seven months of the term of incarceration originally

imposed.  As a result, the analysis of whether sentence modification is appropriate looks very

different today than it did in June of 2021.

A.  Extraordinary and Compelling Circumstances Warranting Release

Circumstances constituting extraordinary and compelling reasons include serious medical

conditions.  U.S.S.G. § 1B1.13, cmt. 1(A).  Accordingly, courts within this circuit and across the

country have concluded that "extraordinary and compelling" circumstances exist when an

incarcerated defendant suffers from health conditions that make him particularly susceptible to

serious complications should he contract COVID-19.  *See, e.g.*, *United States v. Colvin*, 451 F.

Supp. 3d 237, 240 (D. Conn. 2020).  I conclude that Howell's chronic kidney disease, in light of

the COVID-19 pandemic, constitutes an extraordinary and compelling circumstance within the meaning of the First Step Act.

The CDC identifies individuals with chronic kidney disease as being at greater risk of serious illness should they contract COVID-19. *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 6, 2023) ("chronic kidney disease of any stage increases your risk for severe illness from COVID-19"). Likewise, this Courts has recognized that kidney disease heightens an individual's potential risk from COVID-19, *United States v. Jones*, 2020 WL 2782395, at *4 (D. Conn. May 29, 2020), and can constitute an extraordinary and compelling reason for release in light of the COVID-19 pandemic, *United States v. Paris*, 2021 WL 688785, at *2 (D. Conn. Jan. 29, 2021).

I have not always been persuaded that Howell's chronic kidney disease was an extraordinary and compelling circumstance. In earlier rulings, I observed that Howell's medical records were ambiguous about whether he was afflicted with the disease. Doc. No. 115 at 6; Doc. No. 126 at 5. Since then, Howell has presented evidence substantiating a diagnosis of chronic kidney disease, stage 3a, and treatment for the illness. *E.g.*, Doc. No. 159 at 6. Moreover, Howell has persuaded me that his condition is progressive and progressing rapidly. For example, in medical records from July of 2021, Howell denied having pain in his lower abdomen and flank and denied difficulty urinating. Doc. No. 153 at 10. By January of 2022, Howell had complained of flank pain and difficulty urinating. Doc. No. 157 at 1. By September of 2022, Howell reported sharp pain in his right lower abdomen and flank, decreased urination, and constipation; and he required acute care at UPMC Williamsport. Doc. No. 159 at 2, 21. As Howell sets forth in his motion, his symptoms are consistent with an advancing form of a disease

that, in later stages, may require dialysis or a kidney transplant. *See* Doc. No. 157 at 2-4. I

recognize that Howell's receipt of both doses of the Moderna vaccine have lessened his risk of

severe symptoms of COVID-19, *see* doc. no. 143 at 3, and that he experienced an asymptomatic

presentation of the virus in December of 2021, doc. no. 155, at 5. I nonetheless conclude that

Howell has established that he is at risk of severe infection due to his kidney disease if he were

to contract COVID-19 again.

I must also weigh the status of coronavirus infections at Allenwood Medium FCI to

determine whether extraordinary and compelling reasons warrant Howell's early release. *See*

*United States v. Colon*, 2020 WL 6049215, at *7 (D. Conn. Oct. 12, 2020) (collecting cases). At

Allenwood Medium FCI, the BOP is operating under modified procedures to mitigate the spread

of COVID-19. *See* Federal Bureau of Prisons, COVID-19 Modified Operations Plan & Matrix,

available at https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last

accessed January 6, 2023). Facility-wide masking is required but social distancing generally is

not. *Id.* Such measures appear to be effective, because FCI Allenwood Medium currently

reports zero active COVID-19 cases among 1,274 inmates. Federal Bureau of Prisons, COVID-

19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed January 6, 2023).

Nevertheless, Howell's likelihood of contracting COVID-19 and experiencing serious illness has

not been— and cannot be— eradicated. The evolution of new variants and the inherent difficulty

of controlling the spread of COVID-19 in the congregate environment of a federal prison pose

ongoing risks. *See United States v. Suggs*, 2021 WL 2661874, at *5 (D. Conn. June 28, 2021),

*reconsideration denied*, 2021 WL 3514667 (D. Conn. Aug. 9, 2021). Those risks are heightened

in light of Allenwood Medium FCI's current policy limiting social distancing within the facility.

In light of Howell's risk profile, the extraordinary and compelling circumstances factor supports his application for compassionate release.[1]

B.  Section 3553(a) Factors

I am further required to ensure that sentence modification comports with the sentencing factors identified in section 3553(a).  18 U.S.C. § 3582(c)(2).  Those factors include: the nature and circumstances of the offense; the defendant's history and characteristics; the risk of recidivism and the risk release might pose to public safety; the seriousness of the offense; the need to provide just punishment and promote respect for the law; the need to adequately deter criminal conduct; and the need to provide the defendant with "educational or vocational training, medical care, or other correctional treatment."  18 U.S.C. § 3553(a)(2)(A)–(D).  "The weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge."  *United States v. Keitt*, 21 F. 4th 67, 72 (2d Cir. 2021) (cleaned up).

I have previously observed that Howell has committed serious crimes and has a lengthy criminal history, have concluded that time served would be insufficient to accomplish the goals of Howell's sentence, and have denied release in light of the section 3553(a) factors.  *See*, *e.g.*, Doc. No. 126 at 5.  In the interim, years have passed.  I must now consider the section 3553(a) factors in light of the extensive additional time that Howell has served in prison.

At this point, Howell has spent nearly forty-seven months— approximately seventy percent of a sixty-six-month sentence, not counting good time credits— in custody.  Indeed, Howell represents that he has served roughly eighty percent of his total sentence.  Doc. No. 157 at 3.  His almost four years of incarceration have been served, in substantial part, in harsher and

---

[1] Howell additionally alleges that the BOP's failure to provide adequate care for his chronic kidney disease constitutes an extraordinary and compelling reason warranting release.  *See generally* Docs. No. 151 and 157.  As set forth in my previous ruling, damages or injunctive remedies arising from a civil suit would more appropriately redress such alleged injury.  *See* Doc. No. 143 at 3.

more restrictive conditions due to the ongoing COVID-19 pandemic.  Howell will be eligible for release to home confinement in seven months.  Due to his lengthy duration in custody and his completion of the significant majority of his sentence, release will no longer undermine sentencing goals.  *See United States v. Cannon*, 2022 WL 2867858, at *5 (D. Conn. July 21, 2022); *accord United States v. Clark*, 2021 WL 1066628, at *10 (S.D.N.Y. Mar. 18, 2021) ("[C]ourts have found that compassionate release for defendants who have served the significant majority, at least two-thirds, of their sentences does not undermine sentencing goals.").

Regarding the risks of recidivism and danger to the public, Howell appears to have made strides towards rehabilitation.  The government contends that Howell's two significant disciplinary infractions in prison— one for assaulting another inmate, another for possessing a cell phone— demonstrate that he has not changed and warrant concern regarding his willingness to abide by the conditions of supervision on release.  *See* Opp'n, Doc. No. 155, at 5.  I credit that assessment, but I also observe that Howell has availed himself of opportunities for rehabilitation during his time in custody.  Howell pursued educational and vocational training, including obtaining his GED, doc. no. 146 at 3, and numerous credits towards release to a residential reentry center or home confinement, docs. no. 157 at 4 and 159-1.  Additionally, his attitude appears to have improved; he writes that he is ready to reconnect with his children, finish his commercial driver's license, and realize a "brighter future."  Doc. No. 146 at 3.  Moreover, I observe that Howell's family has demonstrated an extraordinary willingness to advocate for him during his term of incarceration, and I am optimistic that their support will help him succeed as a law-abiding returning citizen.  *See* Doc. No. 157 at 1.

In light of the seven-month balance of Howell's sentence and his re-entry plan, I am no longer persuaded that continued confinement is necessary to protect the public.  *See United*

*States v. Hill,* 2020 WL 2542725, at *3 (D. Conn. May 19, 2020) ("I note the relevant period of

the risk of danger to the community is the time between now and December 10, 2020, when [the

movant] would otherwise be released from BOP imprisonment."). Howell has proposed a

release plan that will likely reduce any risk of recidivism, providing that he will reside with his

mother, Gwendolyn Allen. The U.S. Probation Office has inspected and approved of the

residence. Accordingly, I conclude that the risk of harm to the community during that interim

period of several months can be addressed by requiring Howell to remain in home confinement

and subjecting him to electronic monitoring by the U.S. Probation Office.

In sum, given the length of the sentence that Howell has already served and the limited

time remaining to be served, his progressive medical condition and his increased risks posed by

contracting COVID-19 while incarcerated, and his record of rehabilitation, I am persuaded both

that extraordinary and compelling reasons for release are present, and that sentence modification

would comport with the factors set forth in section 3553(a).

## IV.      Conclusion

For the foregoing reasons, Howell's renewed motion for compassionate release, doc. no.

162, is **granted**. His custodial sentence is reduced to a term of time served as of **January 6,

2023**, on which date the Federal Bureau of Prisons shall **release** Howell from BOP custody to

travel directly to the home of Gwendolyn Allen to commence his three-year term of supervised

release, subject to all the conditions that were previously imposed, with the additional condition

that Howell will spend the first **six months** of that term on home detention. Following release,

Howell shall contact the United States Probation Office as soon as possible, but in any event

within 72 hours.

9

In light of the fact that the relief sought has been granted, Howell's earlier motions for compassionate release, docs. no. 146, 151, and 157, are **denied as moot**.  Howell's pending motions a certificate of appealability and for status, docs. no. 147 and 148, are also **denied as moot**.

So ordered.

Dated at Bridgeport, Connecticut, this 6th day of January 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge